# In re Estate of John R.H. Thouron

428

C.P. of Chester County, No. 1507-0230

*William H. Lamb* and *John J. Cunningham*, for executor.

*John Chesney* and *William C. Bullitt*, for beneficiaries.

TUNNELL, *J.*, October 9, 2013—Presently before the court is the petition of Rachel Vere Nicoll and John R. Thouron to disqualify Lamb McErlane P.C. from representing Executor Charles H. Norris, Jr. with respect to the objections to the first account of Charles H. Norris, Jr. ("petition"). For the reasons set forth below, and accepting as true all facts alleged therein, the court denies the petition.

## I. FACTS AND PROCEDURAL HISTORY

John R. H. Thouron ("decedent") died on February 6, 2007, leaving a last will and testament dated October 4, 2005, which was probated in the Office of the Register of Wills of Chester County, Pennsylvania on February 9, 2007, appointing Charles A. Norris, Jr. ("executor") as personal representative of his estate (the "estate") upon his death. (Petition of executor for approval to depose witnesses, at ¶1.) On February 16, 2007, the Register of Wills of Chester County, Pennsylvania issued Letters Testamentary to Norris. (*Id.* at 2.) Since 2006, Lamb

McErlane P.C. ("Lamb McErlane") has represented executor of decedent's estate. (*See* Lamb McErlane engagement letter, dated April 13, 2006.) On May 4, 2007, petitioners Rachel Vere Nicoll and John R. Thouron ("beneficiaries") filed a petition for administration in Martin County, Florida (Case No.: 07-318-CP (Fla. Cir. Ct. 19th Cir.), which opposed executor's decision to probate the estate in Chester County, Pennsylvania. Lamb McErlane represented executor in the Pennsylvania proceedings. The court is not aware of any time during those proceedings that beneficiaries sought to disqualify Lamb McErlane from representing executor. Despite years of hostile litigation, the parties were unable to "reach an appropriate settlement in these matters." (Memorandum of law in support of executor's pet. for ltd. deps., at exs. A-B.) On March 4, 2013, executor filed a first account. On April 3, 2013, beneficiaries filed objections to the first account by executor. On May 28, 2013, beneficiaries filed the present petition. On June 13, 2013, executor filed his response thereto.

## II. LEGAL ANALYSIS

A. Both the Avoidance of Conflicts of Interest and a Party's Right to Choose Its Counsel Are Important Principles.

The Supreme Court of Pennsylvania has stated that "[t]he trial court in the first instance has the power to regulate the conduct of attorneys practicing before it, and has the duty to insure that those attorneys act in accordance with the Code of Professional Responsibility." *Dougherty v. Philadelphia Newspapers, et al.*, 2013 Phila. Ct. Com. Pl. LEXIS 110, *11 (Phila. 2013)(citing *American Dredging Co. v. City of Philadelphia*, 389 A.2d 568, 571 (Pa. 1978)).

The Pennsylvania Rules of Professional Conduct define proper conduct of attorneys for purposes of professional discipline and define those areas in which an attorney has discretion to exercise professional judgment. Rules of Professional Conduct, Preamble and Scope (14). At issue here, is Pennsylvania Rule of Professional Conduct 1.7(a), which prohibits a lawyer from representing a client "if the representation involves a concurrent conflict of interest." Rule 1.7(a). Such a conflict exists if there is a significant risk that "the representation of one or more clients will be materially limited by the lawyer's responsibilities to...a third person." Rule 1.7(a) and 1.7(a)(2).

Notwithstanding the importance of these rules and the courts' role in ensuring proper conduct from those practicing before it, courts also recognize that "[a] party's choice of counsel has a longstanding tradition of receiving substantial deference." *Dougherty*, at *10; *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986). The Supreme Court of Pennsylvania has recognized that disqualification and removal of counsel "is a serious remedy 'which must be imposed with an awareness of the important interest of the client in representation by counsel of the client's choice.'" *McCarthy v. Septa*, 772 A.2d 987, 991-992 (Pa. Super. 2001)(citing *Slater v. Rimar, Inc.*, 338 A.2d 584, 590 (Pa. 1975)). As the court in *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.* stated, "a court should disqualify an attorney:

'only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rules. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as

permitting a litigant to retain counsel of [its] choice and enabling attorneys to practice without excessive restrictions.

808 F. Supp. 1200, 1203 (E.D.Pa. 1992)(citation omitted). The Pennsylvania Supreme Court has held that disqualification is appropriate only if necessary to "insure the parties receive the fair trial which due process requires." *In Re Estate of Pedrick*, 482 A.2d 215, 221 (Pa. 1984). As the court in *Dougherty* aptly noted, because "[m]otions to disqualify are intensely fact specific" courts should apply "a sense of practicality" in deciding such motions. *Dougherty*, at *12.

B. Beneficiaries' Delay in Asserting the Disqualification Issue Constitutes a Waiver of Their Objection.

Waiver has been held by several courts to "be a valid basis for denial of a motion to disqualify." *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1204 (E.D. Pa. 1984)(citations omitted); *see also Dougherty*, at *13 (holding after fact specific inquiry that delay of one and one-half years constituted waiver of disqualification objection). Waiver has been found to be justified when a former client was aware of the representation of an adversary but failed to raise the objection promptly. *Id.* Factors courts have considered when deciding the issue of waiver include whether the request for disqualification is being made for tactical purposes, the length of the delay in asserting a disqualification objection, and the potential prejudice to the party whose counsel may be disqualified. *See Hamilton*, 645 F. Supp. at 61, *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976).

In *Dougherty*, plaintiff initiated a defamation action in 2009 against defendant stemming from plaintiff's

candidacy for the state senate and articles and editorials in the newspapers during that time which plaintiff alleged were disparaging. *Dougherty*, at *1-2. Counsel for defendants previously represented plaintiff in a federal investigation. *Id.* at *2. Seventeen months later, in 2012, plaintiff moved to disqualify defendants' counsel because of its alleged conflict, *i.e.* having represented plaintiff in a substantially related matter. *Id.* Defendants argued that disqualification was too extreme a sanction and that the seventeen month delay in seeking disqualification was inexcusable and not addressed by plaintiff in his pleadings. *Id.* at 3, 5. The court, analyzing the facts before it and employing a "sense of practicality," agreed that plaintiff's delay was "too long a period to wait" and denied the motion to disqualify. *Id.* at *12.

1. The Substantial Passage of Time Warrants Denial of Beneficiaries' Petition to Disqualify Lamb McErlane.

Beneficiaries have been on notice since at least 2007 that Lamb McErlane represented executor and that their view of the estate's administration may be different from that of the executor. Executor initiated these probate proceedings in Pennsylvania in early 2007. Within three months, and while the proceedings were still ongoing, beneficiaries initiated their own administration proceeding in Florida — clearly in opposition to the position taken by executor, who was represented by Lamb McErlane. At no time during the earlier proceedings in this court did beneficiaries assert that a conflict existed with Lamb McErlane even though then — as now — beneficiaries took a position 'adverse' to executor. Beneficiaries certainly felt that probating the matter in Pennsylvania would be to their detriment, yet they did not petition for disqualification of counsel. During this time, beneficiaries were represented by counsel and

though they objected then to the actions of executor, they chose not to disqualify. It is evident that during this time the relationship between the parties and counsel was hostile. The parties themselves described their exchanges as "trench warfare." (Petition to depose, ex. A.) Only in May, 2013, nearly six years later, did beneficiaries assert any concerns about conflicts of interest or the ability of the Lamb McErlane firm to continue its representation of executor in the estate's administration. As courts have noted, motions to disqualify that are made for purely tactical reasons are highly disfavored. *Hamilton*, 645 F. Supp. at 61. Here, beneficiaries simply waited too long and after much "water under the bridge" to raise their objection to Lamb McErlane serving as counsel to executor. The length of their delay leads the court to conclude that beneficiaries have raised their objection now for essentially tactical reasons and their petition should, therefore, be denied.

2. Prejudice to the Parties Would Result if Lamb McErlane Were Disqualified.

In the fact specific analysis that a court must undertake when deciding a motion for disqualification, concern for the prejudice that may result to a party who is required to obtain new counsel is an appropriate consideration. *INA Underwriters*, 594 F. Supp. at 1203; *see also Pew Trust (No. 2)*, 16 Fiduc. Rep. 2d 80 (Ct. Com. Pl., Mont. Cnty. 1995). Clearly, this estate administration has been an extended endeavor involving years of discussion and litigation between beneficiaries and executor through their competent counsel from two respected law firms. Requiring a change in counsel after six years of proceedings would, in essence, result in executor facing the prospect of going over the minutia of years of estate administration with new counsel. New counsel would have to familiarize

itself with all aspects of the Estate and its administration since 2006, including a protracted litigation, as well as the current objections raised by beneficiaries. The court surmises that such an endeavor would result in substantial additional costs and inconvenience to all of the parties, most importantly to beneficiaries, and, therefore, chooses not to go down that path.

C. Even if Beneficiaries' Objections Had Not Been Waived, Disqualification of Lamb McErlane is Not Required.

Although the court finds that beneficiaries waived any objection to the continuation of Lamb McErlane as counsel for executor by failing to timely raise the issue, even if it were to analyze the conflict issue, its holding would be the same — disqualification is not required. In support of their petition, beneficiaries acknowledge that absent an agreement otherwise "the only client of counsel for the fiduciary is the fiduciary." (Petition, at ¶4). Executor agrees with beneficiaries on this point. (Response to pet., at ¶14). Further, both parties agree that while beneficiaries are not clients of Lamb McErlane, the firm that represents a fiduciary in an estate owes a derivative duty to beneficiaries. (Petition, at ¶7; response, at ¶14). The parties' disagreement lies in whether a conflict exists between Lamb McErlane and beneficiaries such that Lamb McErlane cannot represent both executor, against whom objections have been raised, and fulfill its derivative duties to beneficiaries.[1]

---

1. In *Pew Trust (No. 2)*, the court defines derivative duties as "prohibitions from the lawyer taking advantage of his or her position to the detriment of the fiduciary estate or its beneficiaries." 16 Fiduc. Rep. 2d at 85.

Beneficiaries seem to suggest that a conflict exists because any action taken by executor in response to beneficiaries' objections would, in and of itself, be to the detriment of beneficiaries. They rely primarily on two cases, *Pew Trust (No. 2)* and *In re Estate of Westin*, in support of their position. 16 Fiduc. Rep. 2d at 80; 874 A.2d 139 (Super. Ct. 2005). The court finds beneficiaries' arguments about how continued representation of executor by Lamb McErlane would harm beneficiaries to be too general and lacking specifics to warrant the drastic remedy of disqualification. Moreover, the court finds the facts of *Pew Trust (No. 2)* and *In re Estate of Westin* to be distinguishable from those in this case.

In *Pew Trust (No. 2)*, the orphan's court was presented with objections from beneficiaries in an accounting action involving a corporate trustee that was represented by a law firm that soon would be named individually as a defendant in a companion federal case. *Pew Trust (No. 2)*, 16 Fiduc. Rep. 2d at 85. At the center of the dispute was a tax opinion authored by the law firm and this fact "formed the basis for [the court's] position" regarding disqualification. *Id.* at 81. Pursuant to the tax opinion, the firm was alleged to have encouraged the corporate trustee to participate in a $1.36 billion dollar stock transaction. *Id.* The court held that the firm's third party responsibilities to the beneficiaries "are derived from the fact that at request of . . . family members and trustee" the firm did render its tax opinion. *Id.* at 87. The court's opinion was also influenced by the fact that the law firm was about to be named as an individual defendant in a companion matter. *Id.* at 81.

The case of *In re Estate of Westin* involved creditors of an estate who initiated an action to remove and surcharge the executor, a lawyer, and his firm, who represented the

estate, after the estate lost assets due to criminal activity at the firm. 874 A.2d at 142. At a hearing regarding distribution of the estate's assets, the court learned that an office manager of the law firm had embezzled funds belonging to the estate. *Id.* After appellants petitioned for removal of the executor, the executor consented to withdraw. *Id.* Appellant-creditors appealed and asserted, among other things, that the trial court erred by refusing to grant a hearing on the removal of the executor. *Id.* In discussing its authority to remove a personal representative, the court addressed the appropriateness of removing a fiduciary when the fiduciary's personal interest is in conflict with that of the estate, such that the two interests cannot be served simultaneously. *Id.* at 143. Analyzing the facts of the case before it, the court found that where estate funds have been embezzled by the law firm of which its executor is a member, it would be reasonable to assume the estate would have grounds for a claim against the lawyer and the firm. *Id.* The court was concerned that "[the lawyer] would then be in the position of representing the estate, in his capacity as executor, in a claim against himself and his law firm." Therefore, the court found there was a conflict of interest requiring a new executor. *Id.*

The facts here are different from those in either *Pew Trust (No. 2)* or *In Re Estate of Westin.* Unlike those cases where the lawyer's and firm's conflict was delineated clearly and their actions were central to the objections raise by the petitioners, beneficiaries here have not provided any factual specifics to support their assertion that a conflict exists that would merit removal of Lamb McErlane. Beneficiaries have not delineated how continued representation of executor by Lamb McErlane would be "to the detriment of the beneficiaries." (Petition,

at ¶14.) Paragraph 14 of the petition states only that Lamb McErlane's derivative duties to beneficiaries prevent them from continuing to represent the estate in addressing the administrative charges to which they object. This alleged "conflict" as stated does not rise, in this court's view, to the level of conflict presented by the facts in *Pew* and *Westin*. Lamb McErlane is not alleged to have authored a legal opinion at the request of beneficiaries that is central to their objections as in *Pew*, its lawyers have not served as executor for the estate, nor has it been alleged that it engaged in criminal activity as in *Westin*. Moreover, in each of those cases, the courts' concerns about conflicts were impacted by the challenged lawyers being subject to individual suit. We do not have those facts here. Rather, what we have is an objection to the reasonableness of the legal fees charged by the firm and certain other administrative charges. As a practical matter, it is not uncommon for beneficiaries to object to an accounting. However, neither party has suggested that in every such situation a conflict of interest arises that requires disqualification of estate counsel. If so, every estate counsel would be disqualified once an objection had been raised by beneficiaries.[2] This is not the approach the courts have taken in such matters. Instead, courts have engaged in a case by case analysis of the facts offered in support of each request and ruled accordingly.

## III. CONCLUSION

---

2. The fact that Lamb McErlane might be called upon to testify regarding the reasonableness of their fees does not mandate disqualification under Rule 3.7. As the court in *Pew Trust (No. 2)* noted, the exception to the general rule prohibiting a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a witness "permits the attorney to continue to serve as an advocate where the testimony relates to the nature and value of the legal services rendered in a case." *Pew Trust (No. 2)*, at 82; Rule of Prof. Conduct 3.7(a)(2).

After considerable analysis of the facts unique to this case and the remedy requested, the court finds that disqualification is not warranted.

An appropriate order follows.

## ORDER

And now, this 9th day of October, 2013, upon consideration of the petition of Rachel Vere Nicoll and John R. Thouron to disqualify Lamb McErlane P.C. from Representing Executor Charles H. Norris, Jr. with respect to the objections to the first account of Charles H. Norris, Jr. ("petition"), accepting as true all facts alleged in the petition, and the response thereto, it is hereby ordered and decreed that the petition is denied.